So Ordered. /s/ Judith A. Boulden 11/23/05

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| In re: | Case No. 05B-80022 |
|---|---|
| HEATHER MONTOYA, | Chapter 13 |
| Debtor. | Judge Judith A. Boulden |

## MEMORANDUM DECISION AND ORDER DENYING DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(c)(3)(B)

In a case of first impression, Heather Montoya (Debtor) has filed a Motion to Extend the Automatic Stay Pursuant to 11 U.S.C. § 362(c)(3)(B) (Motion). Because the Debtor had a prior Chapter 13 case pending within the preceding 1-year period that was dismissed, the stay prohibiting any action taken with respect to her will terminate on November 26, 2005. An objection to the Motion was filed by J. Vincent Cameron, the Chapter 13 Trustee. An evidentiary hearing on notice to all parties was conducted on November 23, 2005. Based upon the evidence presented, the arguments of the parties, and upon an independent review of applicable case law, the Motion is denied for the reasons set forth below:

1

## FACTS

The Debtor has filed three bankruptcy petitions. The first case was filed in August of 1999 under Chapter 13 and a plan was confirmed in March of 2000 (First Filing). The Debtor's schedule of current income indicated monthly net income of $1,309 and expenses of $1,075, allowing a plan payment of $234. The confirmed plan provided for payments of a claim secured by a vehicle valued at $4,000, secured household goods valued at $500, tax claims of about $2,400, and a return of 29% to unsecured creditors. Five months later, the Debtor was fired from her job, could not continue to make the plan payments, and the First Filing was voluntarily converted from Chapter 13 to Chapter 7. The Chapter 13 Trustee's final report indicates that the total of $1,404 paid by the Debtor into the plan partially paid administrative claims, but no distribution was made to non-administrative creditors. The docket reflects that the stay was lifted in favor of a creditor with a secured interest in a vehicle. The Debtor received a discharge in November of 2000, and the case was closed as a no-asset case.

The Debtor filed her next Chapter 13 case in August of 2004 (Second Filing). The Debtor's schedule of current income showed net income of $1,472 and expenses of $1,246. The Debtor scheduled, or creditors filed claims, listing the following debt, and the Debtor proposed the following plan treatment:

| Creditor | Priority Claims | Secured Claims | Unsecured Claims |
|---|---|---|---|
| Menlove Dodge secured by a 1997 Mercury Tracer | | $4,000 @ 5.5% interest | $2,000 |
| Utah State Tax Commission | $1,916 | $620 @ 3% interest | $357 |

2

| | | |
|---|---|---|
| Internal Revenue Service | $2,417 | $3,597 |
| Unsecured claims | | $1,414 scheduled<br>$530 filed @ 10% |

The Debtor was to commence plan payments of $177 in September of 2004. The November payment was abated because the Debtor had unexpected car repairs. The Debtor's plan was confirmed in March of 2005, and required payments of $226 per month. The plan payments for March and April of 2005 totaling $452 were abated because the Debtor incurred medical expenses due to emergency surgery. The Debtor made one plan payment under the confirmed plan in June. The Debtor then had another surgery in July 2005 and ceased making payments. The Chapter 13 Trustee moved to dismiss the case for failure to make payments. An order dismissing the case was entered on October 21, 2005. The Debtor paid five payments of $177 into the plan prior to confirmation, and one payment post confirmation of $226, for a total paid into the plan of $1,111. Although no final report has yet been filed, the Court notes that with attorney fees and trustee expenses no distribution would have been made to non-administrative creditors.

The current Chapter 13 case was filed six days later on October 27, 2005 (Third Filing). The Debtor's schedule of current income shows net income of $1,590 and expenses of $1,365. Her employer is the same employer she had in the Second Filing, and the Debtor testified that her medical condition has been resolved. The Debtor proposes a plan payment of $225 per month. The Debtor scheduled claims listing the following debt, and she proposed the following plan treatment:

3

| Creditor | Priority Claims[1] | Secured Claims | Unsecured Claims |
|---|---|---|---|
| Menlove Dodge secured by a 1997 Mercury Tracer | | $2,230 @ 5.5% interest | $1,770 |
| Utah State Tax Comm. (USTC) | $1,916 | $620 @ 3% interest | $357 |
| Internal Revenue Service (IRS) | $2,417 | | $3,598 |
| Unsecured claims | | | $14,778 scheduled @ not less than $1,202 distributed pro rata |

On November 2, 2005, the Debtor filed the Motion, stating simply that "[t]he Debtor alleges that the filing of this case is in good faith as to all creditors in her case and that extension of the stay in this case will allow the Debtor to effectively prosecute a Plan that returns the most possible to creditors."[2] Consistent with local practice, the Motion further stated that in the absence of a written and properly filed objection, the Court may grant the Motion and the scheduled hearing would be stricken. No supporting documents or affidavits accompanied the Motion. The Motion and Notice of Hearing were timely served on the Chapter 13 Trustee and all of the Debtor's creditors. Only the Chapter 13 trustee has objected.

The evidence presented at the hearing focused on the Debtor's prior filings, her current employment and medical circumstances, and the feasibility of her current plan. She testified that

---

[1] The Debtor states in her plan that there are priority claims totaling $8,289. A review of the Debtor's schedules shows that the Debtor's total tax liability to the Internal Revenue Service and the Utah State Tax Commission is $8,289. This amount appears to include both the priority and unsecured portions of the tax authorities' claims. The plan and the schedules are inconsistent.

[2] Motion, p. 1.

4

her medical problems have now been resolved. She also testified that she believed her plan payment in the Second Filing was $145, and that she would make an increased plan payment in this case of $225 by "just paying extra." No evidence was presented that specifically focused on whether this case was file in good faith "as to the creditors to be stayed."

## DISCUSSION

### A. Jurisdiction

The Motion to continue the automatic stay is a core matter, and the Court may enter a final order.[3] Notice of the Motion was properly and timely served on the appropriate parties.

### B. Application of § 362(c)(3)(A) and (B)

Section 362(c)(3)(A) provides that the automatic stay will terminate 30 days after filing if the debtor had another case pending under Chapters 7, 11, or 13 within one year, but the case was dismissed, other than a case under Chapter 7 after a § 707(b) dismissal. Section 362(c)(3)(A) is applicable to this Debtor. The Second Filing constitutes one other case pending within the previous 12 months and that case was dismissed. None of the cases filed by the Debtor involve a motion filed under § 707(b). Therefore, the stay prohibiting any action taken with respect to her will terminate on November 26, 2005.

Section 362(c)(3)(B) sets forth the procedure and notice requirements to be used when a party in interest requests extension of the stay beyond the 30-day period provided for in § 362(c)(3)(A). The Debtor has filed her Motion under § 362(c)(3)(B), has served the Motion and Notice of Hearing on all parties on the matrix, and the hearing has been completed before the expiration of the 30-day period. All parties in interest have been given notice of not only the

---

[3] 28 U.S.C. § 157(b)(2)(G) ("motions to terminate, annul, or modify the automatic stay").

5

hearing date, but also the Debtor's grounds for requesting an extension of the automatic stay as to *all* creditors. The pending Motion differs from the motion filed by the debtor in the recently issued *Charles* opinion.[4] Here, the Debtor has attempted to articulate why the stay should be extended as to all creditors and, therefore, while instructive, the bankruptcy court's analysis in *Charles* is not particularly helpful in this case.

## C.   Application of § 362(c)(3)(C)

The Motion seeks to extend the stay as to all the Debtor's creditors. Before a decision can be made whether or not to grant the Motion, the Court must determine whether § 362(c)(3)(C) is applicable. The Debtor seeks to continue the automatic stay as to *all* creditors so subsection (i) must be applied to the facts of this case to determine if the presumption arises. Subsection (ii) of § 362(c)(3)(C) is inapplicable because no creditor[5] had commenced an action under subsection (d). The presumption that the case is filed not in good faith arises as to all creditors under § 362(c)(3)(C)(i) if any one of three events has occurred:[6] (I) the debtor had more

---

[4]   *In re Charles*, No. 05-95071-H1-13, ___ B.R. ___, 2005 WL 2897462, at *1 (Bankr. S.D. Tex Nov. 04, 2005).

[5]   In the First Filing, the stay was lifted in favor of the creditor with a secured interest in the vehicle. That creditor is not listed in the Third Filing. Because of that fact, the Court need not deal with the issue of whether the creditor referred to in § 362(c)(3)(C)(ii) is a creditor in the pending, or in a prior, case.

[6]   Section 362(c)(3)(C) states:
for the purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary) —
    (i) as to all creditors, if —
        (I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;
        (II) a previous case under any of chapter 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to —
            (aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a

than one previous case under Chapters 7, 11, or 13 pending within the previous year; (II) the debtor, in a previous case, which was dismissed within one year of the current case, failed to perform certain tasks; or (III) there has not been a substantial change in the financial or personal affairs of the debtor. In this case, one of the three events has occurred, and one is enough for the presumption to arise.[7]

1. **Section 362(c)(3)(C)(i)(I)**

Section 362(c)(3)(C)(i)(I) provides that the presumption will arise if "more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period." Counting from and excluding the existing case,[8] the Debtor had more than 1 previous case (the First Filing and the Second Filing) and thus meets the numerosity requirement of § 362(c)(3)(C)(i)(I). Both previous filings meet the qualification as to which chapter the previous case must be filed under, because the First Filing and the Second Filing were under Chapters 7 and 13, respectively. The First Filing and the Second Filing were

---

   substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);
     (bb) provide adequate protection as ordered by the court; or
     (cc) perform the terms of a plan confirmed by the court; or
   (III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded —
     (aa) if a case under chapter 7, with a discharge; or
     (bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed.

[7] Section 102(5) indicates that "or" is not exclusive. The inclusion of the final "or" at the end of § 362(c)(3)(C)(i)(II)(cc) separating subsection (II) from (III) indicates that either of the three subsections (I), (II), or (III) would be sufficient to trigger the presumption.

[8] "Previous" means: "Just preceding something else in time or order . . . of the immediate past." http://www.websters-online-dictionary.org/definition/previous (November 21, 2005).

also of the Debtor, who qualifies as an individual under § 101(41) and (30).[9] The Debtor does not meet the final criterion of § 362(c)(3)(C)(i)(I), however, because the First Filing and the Second Filing were not pending within the preceding 1-year period.[10] The criterion that more than 1 previous case (2 cases) must be "pending" within the preceding 1-year period prevents the application of § 362(c)(3)(C)(i)(I) to the facts of this case.[11] Only 1 previous case (the Second Filing) was pending within the preceding 1-year period.

2.   **Section 362(c)(3)(C)(i)(II)**

Section 362(c)(3)(C)(i)(II) of the Code states that the presumption will arise if the debtor fails to:

---

[9]   Although "individual" is not a defined term under the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA), its meaning is clear when §§ 101(30) and (41) are viewed together. Section 101(30) defines an "individual with regular income" as an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or commodity broker." Section 101(41) defines "person" as an "individual, partnership, and corporation, but does not include governmental unit . . ." By excluding partnerships and corporations, it is evident that "individual" has the Webster's Dictionary definition. *See Russello v. United States*, 464 U.S. 16, 23 (1983) (stating that "where Congress includes particular language in one section of a statute but omits it in another Section of the same Act, it is henerally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal citations and quotations omitted)). *See also Lampe v. Iola Bank & Trust (In re Lampe)*, 278 B.R. 205, 212 (10th Cir. BAP 2002) (stating that statutory language is "given its common meaning if the unambiguous statutory language is not defined and the result is not absurd or contrary to the legislative purpose"(internal citations and quotations omitted)).

[10]  The terminology is curious. Section 362(c)(4)(A)(i) refers to "2 or more . . . cases of the debtor were pending," and § 362(c)(4)(D)(i)(I) refers to "2 or more previous cases," as opposed to § 362(c)(3)(C)(i)(I) which refers to "more than 1 previous case . . . was pending." The Court cannot discern any difference between "2 or more previous cases" and "more than 1 previous case."

[11]  It is curious to note that "more than 1 previous case" could be pending and still have the stay in effect for 30 days under § 362(c)(3). This is because § 362(c)(4) precludes the stay from going into effect upon the filing of a case if 2 or more cases were pending within the previous year, but only if the 2 or more cases were *dismissed*. Therefore, BAPCPA provides more favorable treatment for a case refiled while a prior case is still pending, than it does for a case refiled after a prior case was dismissed.

8

>    (aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);
>       (bb) provide adequate protection as ordered by the court; or
>       (cc) perform the terms of a plan confirmed by the court.

The Debtor meets the criteria in subsection (II). The Debtor's Second Filing was a Chapter 13 case that was dismissed within the preceding 1-year period. The Second Filing was dismissed because the Debtor failed to perform the terms of a plan confirmed by the court – this implicates subsection (cc). Like § 362(c)(3)(A), (B), and (C) generally, subsection (i)(II) is not exclusive as written, and only one of the subsections (aa), (bb), or (cc) need be established to implicate the presumption.

### 3. Section 362(c)(3)(C)(i)(III)

Section 362(c)(3)(C)(i)(III) provides that the presumption will arise if:

>    (III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded —
>       (aa) if a case under chapter 7, with a discharge; or
>       (bb) if a case under chapter 11 or 13, with a confirmed plan
>    that will be fully performed.

An evidentiary issue arises as to whether the Debtor meets the criteria of subsection (III). In the Second Filing, the Debtor's schedule of current income showed net income of $1,472 and expenses of $1,246. The Debtor's schedule of current income in the Third Filing shows net income of $1,590 and expenses of $1,365. Monthly net income has increased by only $118 and expenses have kept pace with a $119 increase. The Debtor continues to have unpaid tax debt. Evidence was presented that the Debtor's medical problems have been resolved, and she therefore

9

argues that there has been a substantial change in her personal affairs since dismissal of the Second Filing, and that there is reason to conclude that the current case will be confirmed plan and fully performed. To the extent this evidence was intended to satisfy the requirements of § 362 (c)(3)(C)(i)(III), it is unnecessary for the court to resolve this evidentiary issue because, even if true, the presumption that the Third Filing was filed not in good faith has already arisen because § 362 (c)(3)(C)(i)(II)(cc) has been met.

### D.  Proving Good Faith by Clear and Convincing Evidence

Having determined that at least one of the three events articulated in § 362(c)(3)(C)(i) has occurred, it is presumed that the Debtor filed not in good faith. Now, the Debtor must show by clear and convincing evidence that the current case is "fil[ed] . . . in good faith as to the creditors to be stayed."[12] The Debtor must do so by coming forward with evidence to prove the nonexistence of the presumed fact the Third Filing is not filed in good faith.[13] Although the

---

[12]   Section 362(c)(3)(B). Clear and convincing evidence is "weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Charles*, 2005 WL 2897462, at *3 (quoting *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004)); *see also In re Diviney*, 211 B.R. 951, 961 (Bankr. N.D. Okla. 1997). The burden of proving lack of good faith in filing a Chapter 13 case is normally by a preponderance of the evidence and is on the party requesting conversion or dismissal under § 1307. The changes made by BAPCPA, however, clearly shift that burden to the "party in interest."

[13]   Federal Rule of Evidence 301, incorporated into bankruptcy cases by Federal Rule of Bankruptcy Procedure 9017, states that "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally set." *See generally Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 385 F.3d 313 (3d Cir. 2004). This rule does not apply in the present matter, however, because both the initial burden of persuasion and the good faith presumption work against the moving party, i.e., the Debtor. Thus, the effect is to elevate the Debtor's showing of good faith that would otherwise require only a preponderance of the evidence to a showing by clear and convincing

presumption has arisen, the Debtor has asserted that because only the Chapter 13 Trustee has filed an objection to the Motion, the Motion should be granted without further evidence presented. By this argument, the Debtor fails to apprehend the significance of the presumption. When the presumption arises, it is as though evidence has already been presented establishing that the case was not filed in good faith. If no further evidence is presented by the Debtor, the only evidence the Court has is the presumption. In some matters, where no presumption arises, an unrebutted allegation in a motion may be deemed admitted if it is not specifically opposed; but here, where a presumption such as § 362(c)(3)(C) arises, the burden shifts back to the movant to present clear and convincing evidence in support of the motion.

To determine the substance of what it means to file a case in good faith as to the creditors to be stayed, the Court must draw upon prior cases interpreting the phrase "good faith" because Congress was presumptively aware of such case law when it used the term in BAPCPA. It has long been the rule that absent clear Congressional intent to the contrary, judicial interpretations of prior law are determinative when concepts, words, or statutory sections are adopted in an amended law on the same subject.[14] But the standard used to determine if a case is filed in good

---

evidence.

[14] *See Pullman Constr. Indus., Inc. v. Nat'l Steel Serv. Ctr. (In re Pullman Constr. Indus., Inc.)*, 132 B.R. 359, 362 (Bankr. N.D. Ill. 1991) ("'The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.' Courts have followed this rule with particular care in construing the bankruptcy code." (internal citations omitted) (quoting *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 501 (1986)); *U.S. v. Rybicki*, 354 F.3d 124, 135-36 (2d Cir. 2003) ("It is a well-established rule of construction that '[w]here Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.'" (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992)) (internal diacritics omitted); *Standard Oil Co. Of N.J. v. U.S.*, 221 U.S. 1 (1911); *In re Deans*, 208 F. 1018 (D. Ark. 1913).

It is also the case that "when the same words are used in different sections of the law, they will be

11

faith may differ depending upon the chapter involved. In Chapter 13, a good faith filing standard is applied to § 1307 conversion or dismissal. The factors to be considered under case law in this Circuit include:

> the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.[15]

In applying these Chapter 13 good faith factors, courts must consider the totality of the circumstances on a case-by-case basis.[16] Good faith filing is also applicable to Chapter 11 cases, although the standard applied differs somewhat. The "classic" badges of a bad faith bankruptcy filing include that the Chapter 11 debtor:

> (1) has only one asset; (2) has only one creditor; (3) acquired property which was posted for foreclosure and the prior owners had been unsuccessful in defending against the foreclosure; (4) was revitalized on the eve of foreclosure to acquire the insolvent property; (5) has no ongoing business or employees; and (6) lacks a reasonable possibility of reorganization, and (7) the Chapter 11 filing stopped the foreclosure.[17]

---

given the same meaning." *Burnson v. U.S.*, 816 F.2d 549, 554 (10th Cir. 1987) (citing *Firestone v. Howerton*, 671 F.2d 317, 320 n.6 (9th Cir. 1982)); *see also In re Joelson*, No. 04-8052, 2005 WL 2722891 (10th Cir. Oct. 24, 2005) and *U.S. v. Richards*, 87 F.3d 1152, 1157 (10th Cir. 1996) (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992) (other citations omitted)).

[15] *Gier v. Farmers State Bank (In re Gier)*, 986 F.2d 1326, 1329 (10th Cir. 1993) (quoting *Love*, 957 F.2d at 1357).

[16] *Id.* Other circuits have adopted a case-by-case totality of the circumstances approach when examining whether a petition is filed in good faith. *See In re Lilley*, 91 F.3d 491 (3d Cir. 1996).; *In re Eisen*, 14 F.3d 469 (9th Cir. 1994); *Love*, 957 F.2d 1350; *Mills v. Rabbitt*, 145 F.3d 1332 (6th Cir. 1998)(table).

[17] *Udall v. Federal Deposit Ins. Corp. (In re Nursery Land Dev.)*, 91 F.3d 1414, 1416 (10th Cir. 1996) (citations omitted).

12

As for Chapter 7 cases, courts disagree whether there is even a good faith filing requirement implicit in Chapter 7.[18] There may be an issue in future cases regarding the appropriate good faith filing standard to be applied under each chapter. For the present, however, this Court chooses to adopt the line of case law interpreting Chapter 13 good faith filing because both the Second Filing and the Third Filing are Chapter 13 cases.

Once the Court has ascertained the appropriate good faith standard and standard of proof to use under § 362(c)(3)(B), it would seem an easy matter to simply apply the standard to the facts of the case. But have the changes in the BAPCPA rendered the good faith standard less meaningful and applicable so that it is now insufficient for the purposes of § 362(c)(3)(B)? A review of the factors stated in *Gier* indicates that the BAPCPA has changed the applicability of some of the factors, but when applied to the totality of the facts of the case, the standard can still be useful to determine whether the Debtor has filed this case in good faith as to the creditors to be stayed. Because of the burden shifting contained in § 362(c)(3) it is as though a moving party has come forward and presented evidence that proves each of the *Gier* factors, and it is now the Debtor's burden to present evidence on each of the factors sufficient to rebut the presumption by clear and convincing evidence. It is, however, important to note that although *Gier* articulates certain factors to examine, these factors are not necessarily weighted, nor are they exhaustive, and in the end this Court is looking at the totality of the circumstances.

---

[18] *Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829, 832 (8th Cir. 1994) (concluding that § 707(a) dismissal analysis should be based on cause rather than on bad faith); *In re Etcheverry*, 242 B.R. 503, 505-506 (D. Colo. 1999) (declining to follow other courts in finding that a lack of good faith is a valid cause for dismissal under § 707(a)). *Compare, e.g. In re Zick*, 931 F.2d 1124, 1126-27 (6th Cir. 1991); *In re Brown*, 88 B.R. 280 (Bankr.D. Hawaii 1988); *In re Bingham*, 68 B.R. 933 (Bankr. M.D. Pa. 1987); and *In re Khan*, 35 B.R. 718 (Bankr. W.D. Ky. 1984).

The first of the *Gier* factors is consideration of the nature of the debt and whether it would be nondischargeable in Chapter 7 as compared to the ability to pay the debt in Chapter 13. This factor is less meaningful under the BAPCPA because the "superdischarge" in Chapter 13 has been largely eliminated since the time *Gier* was issued in 1993.[19] There is less advantage in filing a Chapter 13 case now based solely on the nondischargeable nature of a debt. However, the ability to pay priority, prepetition defaults, and certain secured claims over time still represent an advantage available in Chapter 13. In the Debtor's case it does not appear that any of her debt, save the priority debt, is nondischargeable in a Chapter 7 case, but she is utilizing Chapter 13 to pay priority and undersecured claims. The facts of the case indicate the Debtor is receiving a significant benefit by filing the Chapter 13 case. She has not come forward with any evidence to overcome this factor, and the Court concludes that the first factor weighs against the Debtor.

The second *Gier* factor, the timing of the petition, is already encompassed in the 1-year look-back of § 362(c)(3)(A). There is still, however, a meaningful difference in deciding whether the Debtor's case was filed in good faith when she refiled the Third Filing six days after the prior dismissal (or with a case pending) as opposed to the Third Filing being filed within the 1-year look-back. From her creditors' perspective, the immediate refiling (almost before the ink on the notice of dismissal was dry) prevented them from taking *any* action to collect their debts or

---

[19] The BAPCPA added to the list of debts that are nondischargeable in a Chapter 13 case the debts specified in § 507(a)(8)(C)(a tax required to be collected or withheld and for which the debtor is liable in whatever capacity), § 523(a)(1)(B) (taxes for which no return was filed or were filed after the due date, and after two years before the date of the filing of the petition), § 523(a)(1)(C) (fraudulent tax returns), § 523(a)(2) (false pretenses, false representation or actual fraud), § 523(a)(3) (unlisted debt) and § 523(a)(4) (fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny); Reform Act of 1994 (amending § 1328 to add subsection (a)(3) to make nondischargeable a debt for restitution, or a criminal fine).

14

repossess collateral. The Court concludes that the second factor weighs against the Debtor, and the Debtor has not come forward with evidence justifying the timing of the Third Filing.

The third *Gier* factor of how the debt arose – e.g. through profligate spending as opposed to unavoidable medical expenses – is relevant to whether a refiled case was filed in good faith as to the creditors to be stayed. The Debtor's testimony has presented clear and convincing evidence that some of the new debts incurred are medical debts and that incurring them was beyond her control. Although this is a closer question, because there was little evidence related to how non-medical debt arose, the Court determines that the Debtor has overcome the presumption as to this factor.

The fourth factor is the Debtor's motivation. This appears to be a somewhat subjective factor. One element is whether, from the Debtor's viewpoint, she is attempting to eliminate or to satisfy debt, or whether she is attempting to target a specific creditor. Although the First Filing may be remote for direct application to this case, the fact that her income and expenses have not changed materially between the First, Second, and Third Filings, and that she knew she had been unsuccessful in making payments to her creditors in the First and Second Filings, weighs against her. The Debtor testified, however, that her Third Filing is in good faith because she now has stable employment (loss of employment terminated the Chapter 13 portion of the First Filing), and her medical problems (medical problems caused the dismissal of the Second Filing) have been completely resolved. The Debtor firmly believes that she will be able to confirm and complete this Chapter 13 plan. This subjective belief is supported by the evidence presented of her current changed circumstances. In addition, her testimony indicates a desire to repay her creditors rather than eliminating the debt, and there is no evidence that she is impermissibly targeting a specific

15

creditor. This evidence is sufficient to overcome the presumption that the Third Filing was not motivated by bad faith.

The fifth *Gier* factor – how a debtor's actions affected creditors because of the repeat filing – weighs against the Debtor, and she has not presented proof by clear and convincing evidence that her creditors have not suffered as a result of her repeat filings. The debt to the taxing authorities remains unpaid even though a portion is and has been entitled to priority treatment. The value of the vehicle secured to Menlove Dodge has declined and the creditor has not been adequately protected. It is also reasonable to conclude that the repeat filings have caused additional expenses for creditors trying to track multiple filings, and the Debtor has not presented any evidence to the contrary.

The component that weighs most heavily against the Debtor, the sixth *Gier* factor, is her treatment of creditors both before and after the petition was filed. Considering just the Second Filing, no distribution was made to any non-administrative creditor during the fourteen months of that case. She used depreciating collateral without compensation to the creditor and, as shown in the Third Filing, the collateral has declined in value. In light of the length of time creditors went unpaid, and the fact that no distribution at all was made to creditors, it is a heavy burden indeed for the Debtor to prevail on this factor. But at the hearing no evidence was presented that the treatment of her creditors both before and after the petition was filed, was in good faith.

The final *Gier* factor is whether the Debtor has been forthcoming with the bankruptcy court and the creditors. There is no evidence to indicate that she has not been truthful, but, again, no specific evidence was presented on this issue to rebut the presumption.

16

The Court has found that four of the seven *Gier* factors weigh against the debtor. But this is not just an arithmetic exercise, and different weight may be given to different factors in making a final conclusion based upon the totality of the circumstances.[20] In concluding which factors may be most critical in this analysis, it is important to note that § 362(c)(3)(B) requires this Court to view this issue from the creditors' perspective. Section 362(c)(3)(B) specifically states that the Debtor must demonstrate that the filing of the petition is in good faith as to the creditors to be stayed. Because of this, the Court awards more weight to the fifth and sixth *Gier* factors which presumptively establish that the Debtor's repeat filings have negatively affected creditors. The Debtor needed to come forward with clear and convincing evidence showing the Court that the negative impact on the creditors has now somehow been overcome. The Debtor attempted to do so by testifying that her plan is now feasible, and she will now be able to successfully complete her plan payments. This subjective evidence of the Debtor's intent is insufficient to rebut the presumption because the objective evidence before the Court shows that creditors have received no payments at all for fifteen months, their pre-filing collection rights have been stayed since the Second Filing, some creditor's collateral has depreciated significantly, creditors are not treated any better under this plan than the plan proposed in the Second Filing, any payment to creditors will be over an extended period under the current plan rather than paid immediately from, for example, a pending sale, and, therefore, from the creditors' perspective, the Debtor has not filed in good faith.

---

[20] The *Gier* factors are not an exhaustive list. Courts must examine the totality of the circumstances when making a good faith inquiry. *Gier*, 986 F.2d at 1329.

## CONCLUSION

The Debtor must prove by clear and convincing evidence that this Third Filing is in good faith as to the creditors to be stayed. She has failed. While some of the factors used to determine Chapter 13 good faith filing do not weigh against the Debtor, she has not presented clear and convincing evidence to rebut the factors that weigh against her, nor has she presented clear and convincing evidence that the totality of the circumstances proves that the Third Filing was filed in good faith. Simply put, she has not overcome the presumption. Since she must prove this Third Filing is in good faith as to all her creditors, it is a heavy burden with a harsh result, yet it is a result this Court is compelled to impose. Having failed to meet that burden, the Motion is denied.[21]

---

[21] The Court takes no position at this time as to how the denial of the Motion impacts confirmation of the Debtor's Chapter 13 plan. The stay is not lifted as to property of the estate as defined by § 1306, but only with respect to any action related to a debt or property securing a debt as to the Debtor. Neither does the Court take a position at this time regarding the revesting of property of the estate in the Debtor pursuant to § 1327(c).

## SERVICE LIST

The foregoing **MEMORANDUM DECISION AND ORDER DENYING DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY PURSUANT TO 11 U.S.C.**

§ 362(c)(3)(B) was served by first class mail upon the following this 23rd day of November, 2005.

Lee J. Davis
Tony G. Jones
Law Office of Davis & Jones, P.C.
470 East 3900 South Suite 105
Salt Lake City, UT 84107

United States Trustee
#9 Exchange Place
Suite 100
Salt Lake City, UT 84111-2147

J. Vincent Cameron
Chapter 13 Trustee
47 West 200 South
Suite 600
Salt Lake City, UT 84101